41584. UNITED INSURANCE COMPANY OF AMERICA v. MURRAY.

Submitted October 6, 1965—Decided January 24, 1966—Rehearing denied February 9, 1966—

*R. U. Harden,* for appellant.

*George W. Fryhofer,* for appellee.

BELL, Presiding Judge. Defendant argues that the "house confinement" clause in Part Eleven of the policy must be construed literally; plaintiff contends that it should be liberally construed.

"While there is considerable authority supporting the view

that 'house confinement' clauses are to be literally construed, so as to preclude recovery where the insured for any reason, with the possible exception of emergencies beyond his control, leaves the house, the great majority of cases supports the so-called liberal construction view, holding that while the house confinement clause must be complied with, it need not be literally complied with in order to entitle the insured to indemnity . . . According to the courts which have adopted the liberal construction doctrine regarding 'house confinement' clauses, a person may be totally incapacitated and confined to his home within the meaning of a policy although he takes some exercise outdoors or visits his physician, provided he is entirely incapacitated for work or business on account of his injury or illness." 29A Am. Jur. 636-638, Insurance, § 1530; 1A Appleman, Insurance (1965 Rev. Ed.) §§ 652-653, pp. 567-579; 7 Couch, Insurance (1930 Ed.) § 1678, p. 591; 45 CJS 984, 1173, Insurance, §§ 899, 980 (c). For an extensive annotation on this subject see 29 ALR2d 1408. Some of the cases there annotated (pp. 1419-1420) support the view that the house confinement provision is merely descriptive of the required degree of disability and that "substantial confinement" is a sufficient compliance with the requirement. E.g., National Accident &c. Ins. Co. v. Mergenev, 49 Ohio App. 353 (197 NE 248); Purcell v. Washington Fidelity National Ins. Co., 146 Ore. 475 (30 P2d 742); Brandt v. Mutual Benefit Health &c. Assoc., 30 Tenn. App. 14 (202 SW2d 827); Wade v. Mutual Benefit Health &c. Assn., 115 W. Va. 694 (177 SE 611).

In our view, the problem presented by house confinement clauses of the kind in this case is not one of construction of ambiguous or doubtful terms, but instead, is one of giving effect to clear terms according to their reasonable intendment. See Franklin Life Ins. Co. v. Lewis (Ala. App.), 55 S2d 518, 520. However, it is not necessary to make a part of the decision here a statement of what that "reasonable intendment" might be. Even under the most liberal application of the house confinement clause, plaintiff is not entitled to recover under the facts of this case.

Evidence introduced during trial of the case showed that

plaintiff suffered a cerebral thrombosis in March, 1963. This illness resulted in partial paralysis of the right side of plaintiff's body and in total disability and total loss of time from work.

Plaintiff testified: "Since March of 1963, Doctor Murray has treated me once a week until about six weeks ago, when I started coming every other week. . . Doctor Murray has been treating me at his office in Waynesboro, which is 18 miles by paved roads from my home near Sardis. The Burke County Hospital is about 300 yards from Doctor Murray's office. I go to the hospital to have a lab test run on my blood each week before going to the doctor for examination . . . If I'm feeling very well, I drive from my home to the hospital and doctor's office. If I do not feel well, I get someone to drive me . . . As to whether I have left my house for any purpose other than to go to the doctor and to the hospital and to get medicine, well, I have to get groceries . . . and I get fresh air and a little exercise when I get despondent . . . I live alone . . . I have a colored woman that comes in and fixes some and does the house . . . I fix most of my meals myself . . . I drive a 1957 Ford. I do not go to Sardis every day, just when it's necessary. I do not drive my car when I see fit to do so, just when I feel like it . . . If I get to feeling too bad, sometimes I can go over and spend the night with my sister, or go to my brother's . . . I never have paid too much attention to how many times a week I go to Sardis. It's only just when necessary when I run out of medicine or something to eat or to go around to my sister's . . ."

Dr. Murray, plaintiff's physician, testified: "As to whether in my opinion it is medically beneficial for the plaintiff to leave his house to obtain fresh air and sunshine, I would say it definitely is beneficial, especially since he lives alone, and I would say it was definitely beneficial to him not to be by himself all the time . . . If you've got a limb that's partially paralyzed, exercise is not a bad thing for it. It's a good thing for it . . . In view of his arteriosclerosis, there is a limitation on the amount this man could do . . . In this instance, I felt it was proper for the plaintiff to be out."

Further, plaintiff's attorney testified: "I have had numerous conferences with my client, Mr. Ira L. Murray. In fact, when he comes to see his doctor, he usually comes to see me, too, and we sit down and talk about this case."

Thus the evidence demonstrates that during a substantial portion of the time plaintiff was physically able to and did leave his house to attend to necessary personal and business matters some of which were of non-therapeutic nature. He did his own shopping for groceries and medicine. He visited relatives, and made numerous trips to his attorney's office to discuss this case. He did much of his own driving, including trips to and from Waynesboro, 18 miles from home. It is apparent from the evidence that plaintiff was usually alone and unassisted on these excursions. Thus plaintiff's illness and confinement do not come within even the most liberal interpretation of the house confinement clause of his policy. *Schmidt v. General Accident &c. Co.*, 68 Ga. App. 519, 527 (23 SE2d 479).

"Where the insured is able to, and does, leave his house for primarily business or other personal, as contrasted with therapeutic, reasons, it has generally been held that he is thereby precluded from recovering benefits for house-confining illness or accident." 29 ALR2d 1439. See: Massachusetts Protective Assn., Inc. v. Picard (5th Cir. 1935) 76 F2d 684, 868; Franklin Life Ins. Co. v. Lewis, 55 S2d 518, supra; Franklin Life Ins. Co. v. Strength, (Ala. App.) 58 S2d 126, 128; Garvin v. Union Mut. Cas. Co., 207 Iowa 977 (222 NW 25); Pirscher v. Casualty Co. of America, 131 Md. 449 (102 A 546); American Life &c. Ins. Co. v. Nirdlinger, 113 Miss. 74 (73 S 875); Mutual Benefit Health &c. Assn. v. Milder, 152 Neb. 519 (41 NW2d 780); Hines v. New England Cas. Co., 172 N.C. 225 (90 SE 131). This is true even where the courts, as in the cited cases, subscribe to a non-literal interpretation of the house confinement clause.

*Judgment is reversed with direction to the trial court to grant the defendant's motion for judgment notwithstanding the verdict and to enter judgment for the defendant. Frankum and Hall, JJ., concur.*